1   MICHAEL N. FEUER, Los Angeles City Attorney
2   DEBBIE LEW, Assistant City Attorney
    RICK V. CURCIO, Deputy City Attorney
3       E-mail:  rick.curcio@lacity.org
        State Bar No. 85488
4   CRIMINAL APPELLATE SECTION
    500 James K. Hahn City Hall East
5   200 North Main Street
    Los Angeles, California  90012
    Telephone:  (213) 473-6900
6   Fax:  (213) 978-8779

7   Attorneys for Real Party in Interest
8   PEOPLE OF THE STATE OF CALIFORNIA

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14   COLLEEN FLYNN,                    CV 15-06027-JAK (DFM)

15              Petitioner,           **REAL PARTY IN INTEREST'S
                                       ANSWER TO PETITION FOR
16         v.                          WRIT OF HABEAS CORPUS;
                                       MEMORANDUM OF POINTS AND
17                                     AUTHORITIES**

18   **LOS ANGELES COUNTY CHIEF
     PROBATION OFFICER JERRY           United States Magistrate Judge
19   POWERS,**                         Hon. Douglas F. McCormick

20              Respondent,

21   **PEOPLE OF THE STATE OF
     CALIFORNIA,**
22

23              Real Party in Interest.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................... iii

ANSWER ........................................................................................ 3

MEMORANDUM OF POINTS AND AUTHORITIES ............. 3

PROCEDURAL HISTORY ........................................................ 3

    I.    TRIAL COURT PROCEEDINGS: LOS ANGELES
           COUNTY SUPERIOR COURT CASE NO. 3MP04099. ..... 3

    II.   DIRECT APPEAL: LOS ANGELES COUNTY
          SUPERIOR COURT APPELLATE DIVISION
          CASE NO. BR051250. ..................................................... 4

    III.  STATE HABEAS CORPUS PETITIONS. ...................... 6

    IV.  FEDERAL HABEAS PETITION. .................................... 7

STATEMENT OF THE FACTS .................................................. 8

THE CALIFORNIA STATE COURT'S REASONED
MERITS DECISION .................................................................. 11

PETITIONER'S CONTENTION AND REAL PARTY'S
RESPONSE .................................................................................. 12

    I.    THE HIGHLY DEFERENTIAL AEDPA
          STANDARD OF REVIEW APPLIES. ......................... 13

    II.   PETITIONER CANNOT SHOW THE CALIFORNIA
          COURTS UNREASONABLY CONCLUDED SHE
          FAILED TO SHOW (1) DILIGENCE IN PURSUING
          HER APPEAL, AND (2) PREJUDICE FROM HER
          APPELLATE COUNSEL'S ALLEGED INADEQUACY. ... 17

        A. The California Courts Reasonably Concluded
           Petitioner Failed to Show Diligence in Pursuing
           Her Appeal. ............................................................. 17

B. The California Court's Reasonably Concluded
Petitioner Did Not Show Her Appellate Counsel's
Alleged Inadequacy Prejudiced Her.                    20

   1.  Standard of Review.                            20

   2.  The California Courts Reasonably Concluded
Petitioner Failed to Show Prejudice From Her
Appellate Counsel's Alleged Inadequate
Representation.                                       24

CONCLUSION                                               27

# TABLE OF AUTHORITIES

**Page**

**United States Constitution**

First Amendment                                                                          10, 25

Sixth Amendment                                                                          21


**Federal Cases**

*Bobby v. Van Hook*

    (2009) 558 U.S. 4 [130 S.Ct. 13, 175 L.Ed.2d 255]                         23

*Carter v. Peyton*

    (W.D. Vir. 1966) 262 F. Supp. 701                                          18

*Chaker v. Crogan*

    (9th Cir. 2005) 428 F.3d 1215                                               1

*Delgado v. Lewis*

    (9th Cir. 2000) 223 F.3d 976                                               24

*Early v. Packer*

    (2002) 537 U.S. 3 [123 S.Ct. 362, 154 L.Ed.2d 263]                         15

*Evitts v. Lucey*

    (1985) 469 U.S. 387 [105 S.Ct. 830, 83 L.Ed.2d 821]                        22

*Foley v. Biter*

    (9th Cir. 2015) 793 F.3d 998                                               18

*Fue v. Biter*

    (9th Cir. 2016) 810 F.3d 1114                                              18

*Harrington v. Richter*

    (2011) 562 U.S. 86

    [131 S.Ct. 770, 178 L.Ed.2d 624]              11, 14, 15, 16, 21, 23, 24

*Holland v. Jackson*

    (2004) 542 U.S. 649 [124 S.Ct. 2736, 159 L.Ed.2d 683]                      17, 25

*Hujazi v. Superior Court*

    (Cen. Dist. Cal. 2012) 890 F.Supp.2d 1226               15

*Knowles v. Mirzayance*

    (2009) 556 U.S. 111 [129 S.Ct. 1411, 173 L.Ed.2d 251]     23

*Marshall v. Rodgers*

    (2013) ___ U.S. ___ [133 S.Ct. 1446, 185 L.Ed.2d 540]     17

*Medina v. Hornung*

    (9th Cir. 2004) 386 F.3d 872                     12

*Ortberg v. Moody*

    (9th Cir. 1992) 961 F.2d 135                     1

*Padilla v. Kentucky*

    (2010) 559 U.S. 356, [130 S.Ct. 1473, 176 L.Ed.2d 284]     24

*Renico v. Lett*

    (2010) 559 U.S. 766 [130 S.Ct. 1855, 176 L.Ed.2d 678]     15

*Rice v. Collins*

    (2006) 546 U.S. 333 [126 S.Ct. 969, 163 L.Ed.2d 824]     17

*Roe v. Flores-Ortega*

    (2000) 528 U.S. 470 [120 S.Ct. 1029, 145 L.Ed.2d 985]    21, 22, 23

*Sanders v. Freeman*

    (6th Cir. 2000) 221 F.3d 846                     1

*Smith v. Robbins*

    (2000) 528 U.S. 259 [120 S.Ct. 746, 145 L.Ed.2d 756]     22, 23

*Strickland v. Washington*

    (1984) 466 U.S. 668 [80 L.Ed.2d 674, 104 S.Ct. 2052]    21, 22, 23, 24

*Taylor v. Maddox*

    (9th Cir. 2004) 366 F.3d 992                     17

*Teague v. Lane*

    (1989) 489 U.S. 288 [109 S.Ct. 1060, 103 L.Ed.2d 334]     1

*Williams v. Taylor*
   (2000) 529 U.S. 362 [120 S.Ct. 1495, 146 L.Ed.2d 389]       14

*Woodford v. Visciotti*
   (2002) 537 U.S. 19 [123 S.Ct. 357, 154 L.Ed.2d 279]       21

*Yarborough v. Alvarado*
   (2004) 541 U.S. 652 [124 S.Ct. 2140, 158 L.Ed.2d 938]       23

*Yarborough v. Gentry*
   (2003) 540 U.S. 1 [124 S.Ct. 1, 157 L.Ed.2d 1]       24

*Ylst v. Nunnemaker*
   (1991) 501 U.S. 797 [111 S.Ct. 2590, 115 L.Ed.2d 706]       12

**California Cases**

*In re Amanda A.*
   (2015) 242 Cal.App.4th 537       25

*In re Benoit*
   (1973) 10 Cal.3d 72       18

*In re Cox*
   (2003) 30 Cal.4th 974       22

*In re Grunau*
   (2008) 169 Cal.App.4th 997       18, 19

*In re Joe R.*
   (1970) 12 Cal.App.3d 80       10, 26

*In re Muhammed C.*
   (2002) 95 Cal.App.4th 1325       10, 26

*In re Robert G.*
   (1982) 31 Cal.3d 437       10

*In re Serrano*
   (1995) 10 Cal.4th 447       18, 19

*In re Martin*

    (1962) 58 Cal.2d 133                                     18, 19

*People v. Christopher*

    (2006) 137 Cal.App.4th 418                           25

*People v. Elliot*

    (2012) 53 Cal.4th 535                                   27

*People v. Freeman*

    (2013) 220 Cal.App.4th 607                           21

*People v. Gamache*

    (2010) 48 Cal.4th 347                                   21

*People v. Quiroga*

    (1993) 16 Cal.App.4th 961                          10, 25

*People v. Riser*

    (1956) 47 Cal.2d 594                                     18

*People v. Roberts*

    (1982) 131 Cal.App.3d Supp. 1                    10, 26

*People v. Robles*

    (1996) 48 Cal.App.4th Supp. 1                    10, 26

*People v. Wende*

    (1979) 25 Cal.3d 436                                     22

**Statutes**

Penal Code,

    § 148                                       24, 25, 26

    § 148(a)(1)                                     3

    § 1466                                         4

    § 1466(b)(1)                                   4

    § 1468                                         4

1

**Other Authorities**

2
California Rules of Court, Rules

3
    8.852(a)                                  4

4
    8.853(a)                                  4

5
    8.882(b)(2)                             5

6
    8.882(c)(2)(B)                      5

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1        Under this Court's February 12, 2016, order, Real Party in Interest, the People

2   of the State of California (Real Party), answers the Second Amended Petition for

3   Writ of Habeas Corpus (petition), and admits, denies, and alleges as follows:

4        1.   When the original petition was filed, Petitioner properly was in the

5   constructive custody of the Los Angeles County Probation Department under a

6   valid misdemeanor conviction and an October 29, 2013, order granting probation in

7   Los Angeles County Superior Court case no. 3MP04099, under which Petitioner

8   was on unsupervised or summary probation for 24 months. *Chaker v. Crogan*, 428

9   F.3d 1215, 1219 (9th Cir. 2005).  (Exh. 1, 235-238.)  Petitioner's probation having

10  expired on October 29, 2015, she no longer is in physical or constructive custody in

11  this case.  However, the case is not moot because Petitioner was in constructive

12  custody when the petition was filed. *Sanders v. Freeman*, 221 F.3d 846, 851 (6th

13  Cir. 2000); *Ortberg v. Moody*, 961 F.2d 135, 137, fn. 1 (9th Cir. 1992).

14       2.   The petition appears timely.

15       3.   The petition's claims appear to be exhausted.

16       4.   The petition's claims do not appear to be procedurally barred.

17       5.   The claims set forth in the petition do not appear to be barred by the non-

18  retroactivity doctrine of *Teague v. Lane*, 489 U.S. 288, 310; 109 S.Ct. 1060; 103

19  L.Ed.2d 334 (1989).

20       6.   Petitioner fails to state a claim upon which relief could be granted as her

21  claims are factually and legally deficient.

22       7.   Petitioner is not entitled to an evidentiary hearing under 28 U.S.C. §

23  2254(e).

24       8.   Except as herein expressly admitted, Real Party denies all allegations in the

25  petition and specifically denies that Petitioner's constructive custody was in any

26  way improper, the underlying conviction and probationary order against her are in

27  any way improper, and her federal constitutional rights are or were in any way

28  violated.

1     This answer is based upon the records and files in this case, documents filed

2  by Real Party, and the attached Memorandum of Points and Authorities.

3     WHEREFORE, Real Party respectfully requests that the Petition for Writ of

4  Habeas Corpus be denied with prejudice.

5

6  Dated:  March 3, 2016.                          Respectfully submitted,

7                                                  MICHAEL N. FEUER
                                                   Los Angeles City Attorney
8                                                  DEBBIE LEW
                                                   Assistant City Attorney
9

10                                                 /s/ Rick V. Curcio

11

12                                                 RICK V. CURCIO
                                                   Deputy City Attorney
13                                                 Attorneys for Real Party in Interest
                                                   PEOPLE OF THE STATE OF
14                                                 CALIFORNIA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

# PROCEDURAL HISTORY[1]

## I. TRIAL COURT PROCEEDINGS:  LOS ANGELES COUNTY SUPERIOR COURT CASE NO. 3MP04099.

A Los Angeles County Superior Court misdemeanor complaint filed May 1, 2013, charged Petitioner with delaying and obstructing Peace Officer Saelor's discharge of his duties.  Cal. Pen. Code, § 148(a)(1); undesignated § references are to that code.  (Exh. 1, 1-3.)  On September 20, 2013, a jury convicted Petitioner, who was represented by attorneys Thomas Beck and Joseph Mellis throughout the trial court proceedings.  (Exh. 1, 171, 209-210; Exh. 2, Title Page, 1000-1003.)  On October 29, 2013, the trial court suspended imposition of sentence and placed Petitioner on 24 months summary, unsupervised probation on condition she (1) serve one day in jail with credit for one day; (2) pay a fine and fees or, alternatively, serve 10 days in jail or perform 10 days of community labor; (3) complete an evening "ride-along" with the Los Angeles County Sheriff's Department; and (4) "write an apology to Deput[ies] Saelor and … Avila."  (Exh. 1, 235-238.)

On January 15, 2014, Petitioner filed proof she had written the required apology letters and completed the required ride-along.  She also chose to serve 10

---

[1]  On November 18, 2015, Real Party filed relevant documents from the trial and post-trial proceedings in this case.  This Answer refers to those documents by the exhibit numbers listed in the Notice of Filing of Documents.

The trial record includes the clerk's transcript (Exh. 1) and reporter's transcript for September 17-20, 2013.  (Exh. 2.)  The record also includes documents and orders filed in, or relevant to, Petitioner's direct appeal.  (Exhs. 3A-3J; Second Amended Pet. Exhs. D-F.)  The remaining documents chronicle post-appeal proceedings.  (Exhs. 4A-4C; Second Amended Pet. Exh. G; First Amended Petition Exhs. K, L, 30-47.)

days in jail rather than pay her fine or do 10 days of community labor.  On January 28, 2014, she paid her mandatory fees and surrendered to serve the 10 days in jail. Thereafter, she had no further affirmative obligations or court appearances.  (Exh. 1, 241-244.)  Her probation expired on October 29, 2015.  Thus, she no longer is in actual or constructive custody.

## II.  DIRECT APPEAL:  LOS ANGELES COUNTY SUPERIOR COURT APPELLATE DIVISION CASE NO. BR051250.

On November 7, 2013, Petitioner filed a timely appeal notice.  §§ 1466(b)(1), 1468; Cal. Rules of Court, rules 8.852(a), 8.853(a); undesignated rule references are to those rules.  (Exh. 1, 239-240.)  The notice included her address and telephone number.  One of her two trial lawyers, Joseph Mellis, filled out the notice, but did not check the box indicating he would be her appellate lawyer.  Because the case was a misdemeanor rather than a felony, the appeal was assigned to the Los Angeles County Superior Court Appellate Division (Appellate Division), rather than the California Court of Appeal.  § 1466.

On March 26, 2014, Petitioner served Real Party with an attorney substitution notice filed in the Appellate Division.  (Exh. 3A.)  The notice listed Donald Cook as Petitioner's new appellate counsel.  Cook listed the same address and telephone number for himself as those given by Petitioner in her appeal notice. Cook and Petitioner signed the notice on March 17, 2014.  (Exh. 3A, 1.)

Petitioner is an attorney.  (Exh. 2, 19, 645; Second Amended Pet., Exh. F, 6.) According to her California State Bar Website Profile, she works at the "Law Ofc [sic] [of] Robert Mann & Donald W[.] Cook" at the same address and telephone number listed on her appeal and attorney substitution notices.  (Exh. 3B, 1.)

On April 2, 2014, the Appellate Division issued a notice stating that the appellate record had been filed the previous day, and that Petitioner's opening brief

was due May 2, 2014.  (Exh. 3C.)  The notice further stated, as relevant, that any party failing to file a brief by the date set in the notice, who thereafter failed to file a brief within 30 days of receiving a default notice under rule 8.882(b)(2), "will be subject, without further notice, to the sanctions specified in the notice of default." (Exh. 3C, 1.)[2]  Apparently because the Appellate Division had not yet received or entered Petitioner's attorney substitution notice, the notice was served on Petitioner in pro per at the address listed on her appeal notice.  (Exh. 3C, 2.)

On April 9, 2014, Cook served Real Party *and* Petitioner with an application for a time extension to file the opening brief.  Cook attached a declaration listing other cases on which he was working and his need for additional time to review the record and prepare the opening brief.  (Exh. 3D.)  On April 15, 2014, the Appellate Division granted Petitioner an extension to June 2, 2014.  This order was served on Cook at his listed address.  (Exh. 3E.)

On May 30, 2014, Cook served Real Party *and* Petitioner with an application for a second time extension to file the opening brief.  Cook attached a new declaration listing other cases on which he was working and his need for additional time to prepare the opening brief.  (Exh. 3F.)  On June 6, 2014, the Appellate Division granted Petitioner an extension to July 2, 2014.  This order likewise was served on Cook at his listed address.  (Exh. 3G.)

On July 7, 2014, the Appellate Division filed a default notice that the opening brief had not yet been filed, and giving an August 6, 2014, compliance date.  This order also was served on Cook.  (Exh. 3H.)

On August 20, 2014, two weeks after the compliance date, the Appellate Division issued an order dismissing the appeal for failure to file the opening brief.

---

[2]  As relevant, rule 8.882(c)(2)(B) states that if a misdemeanor appellant, like petitioner, who is not represented by appointed counsel, fails to timely file an opening brief and to comply with the default notice, "the court may impose … the following sanction[]: … the court may dismiss the appeal."

1   This order was served on Cook.  (Second Amended Pet. Exh. D.)

2        Nearly a month later, on September 17, 2014, Cook filed a motion to

3   reinstate the appeal (Second Amended Pet. Exh. F), and lodged a complete opening

4   brief.  (Second Amended Pet. Exh. F, 1, 6; Exh. 3I.)  He attached his declaration

5   explaining the other work obligations which prevented him from filing the opening

6   brief timely, and admitting he should have sought another extension when he

7   realized he could not do so.  (Second Amended Pet. Exh. F, 4-6.)  However, Cook

8   neither explained the six-week delay between the August 6, 2014, compliance date

9   and submitting the opening brief, nor attached a declaration from Petitioner.  Cook

10  served this motion on Petitioner.  (Second Amended Pet. Exh. F, 7.)

11       On September 25, 2014, the Appellate Division denied Petitioner's

12  reinstatement motion because "no good cause appear[ed.]"  (Second Amended Pet.

13  Exh. E.)  Petitioner took no further action in this case for nearly six months.  On

14  October 21, 2014, the Appellate Division issued its remittitur confirming the

15  appeal's dismissal.  (Exh. 3J.)

16

17              **III.  STATE HABEAS CORPUS PETITIONS.**

18

19       On March 15, 2015, represented by new counsel who represented her in all

20  further proceedings, Petitioner filed a habeas corpus petition in the Los Angeles

21  County Superior Court, claiming Cook provided ineffective appellate representation

22  by failing to timely file an opening brief, and asking the court to vacate the order

23  dismissing the appeal.  (First Amended Pet. Exh. K.)  On April 1, 2015, the court

24  dismissed the petition because it could not review an order of its own Appellate

25  Division.  (Second Amended Pet. Exh. G.)

26       On April 13, 2015, Petitioner filed a habeas corpus petition in the California

27  Court of Appeal, alleging the same grounds and seeking the same relief.  (First

28  Amended Pet. Exh. L, case no. B263284.)  On April 23, 2015, the Court of Appeal

1  denied the petition, stating Petitioner "has not stated facts or provided evidence
2  sufficient to demonstrate entitlement to relief."  (First Amended Pet. 30.)

3       On May 7, 2015, Petitioner filed a habeas corpus/review petition in the
4  California Supreme Court, alleging the same grounds and seeking the same relief.
5  (First Amended Pet. 31-47, case no. S226281.)  In response to the court's order,
6  Real Party filed an answer, arguing Petitioner failed to (1) provide a sufficient
7  record to evaluate her claims, or show (2) prejudice, or (3) diligence to assure her
8  brief was timely filed.  (Exh. 4A.)  Petitioner filed a reply.  (Exh. 4B.)  On July 15,
9  2015, the court summarily denied the petition.  (Exh. 4C.)

10
11  ## IV.  FEDERAL HABEAS PETITION.
12

13       On August 10, 2015, Petitioner filed this habeas corpus petition, alleging the
14  same grounds and seeking the same relief as her state petitions.  On September 10,
15  2015, Petitioner filed a first amended petition.  On September 16, 2015, this Court
16  ordered a response.  On November 17, 2015, Real Party filed a motion to dismiss
17  because Petitioner failed to name as respondent any state officer having custody of
18  her.  On December 30, 2015, Petitioner filed opposition and a proposed second
19  amended petition.  On January 28, 2016, this Court granted the motion, dismissed
20  the petition without prejudice, and granted Petitioner 14 days to file a proper
21  amended petition, noting the proposed second amended petition named an improper
22  party.  On February 5, 2016, Petitioner filed what this Court deemed the Second
23  Amended Petition naming a proper custodian.  On February 12, 2016, this Court
24  ordered Real Party to file a motion to dismiss or, alternatively, an answer.

25
26
27
28

## STATEMENT OF THE FACTS

About 1:50 a.m. on April 17, 2013, California Highway Patrol Officers William Avila and Kou Saelor stopped a car containing two people because, based on its erratic driving and signaling, the officers suspected its driver might be under the influence (DUI).  While the passenger, Steven Decaprio, remained in the car, Avila questioned the driver, learned he had been drinking, and had him alight from the car and perform a series of field sobriety tests (FSTs).  While Avila investigated the driver, Saelor stood back, acting as cover officer to secure the scene.  (Exh. 2, 23-28, 335-340.)

A few minutes after the stop, Petitioner, who with Decaprio's girlfriend had been following the stopped car in another vehicle, walked up to the scene during the DUI investigation.  (Exh. 2, 608-610, 645-650.)  She first approached Avila, who directed her to Saelor.  She said she was a friend of the driver and Decaprio and was there to help, and again walked to within a few feet of Avila.  The officers told her she could observe from a distance if she stayed back and did not interfere with the investigation.  Avila directed her back to where Saelor had told her to remain.  Again, she complied.  However, while Avila was demonstrating some FSTs to the driver, Petitioner began mimicking the tests, distracting Avila.  The officers told Petitioner to stop, which she did.  Saelor warned her that if she approached too closely again, she would have to leave the area.  (Exh. 2, 28-34, 340-354.)

Several minutes later, Avila completed his investigation, handcuffed and arrested the driver for DUI, walked him to the patrol car, secured him in the back seat, and began filling out related paperwork.  (Exh. 2, 34-35, 40, 354.)  Thereafter, Saelor walked over to Decaprio, still seated in the stopped car, and motioned for Petitioner to join them, which she did.  They discussed several options regarding what to do with the stopped car.  Petitioner, an attorney with extensive experience with vehicle impound and towing law, wanted the officers not to impound and tow

1   the car to save her friends the related inconvenience and expense. (Exh. 2, 645,
2   665, 677-680, 701-702.)  Saelor explained that because neither the arrested driver,
3   Decaprio, nor Petitioner was the car's registered owner, he was unwilling to park
4   and lock the car and leave it at the scene without the registered owner's consent.
5   Although Petitioner falsely told the officers she had not been drinking (Exh. 2, 666,
6   675-676, 682), they could smell alcohol on her and Decaprio's breath and thus were
7   unwilling to allow either of them to drive the car away; defendant also refused to
8   show the officers her driver's license, providing another reason not to release the
9   car to her.  Thus, Saelor told them he would impound the car and have it towed.
10  Petitioner repeatedly objected, and Saelor repeatedly explained his reasons for
11  doing so.  However, Petitioner continued to object and propose the previously
12  discussed and rejected towing alternatives.  (Exh. 2, 35-39, 345, 354-357.)

13       Saelor ordered Decaprio to exit the car, which he did, and told Petitioner to
14  stand back and not interfere while he conducted an impound search of the car in
15  preparation for having it towed.  Petitioner initially complied while continuing to
16  object.  Saelor reached into the passenger compartment to obtain the car's
17  registration and insurance from the glove box.  While his back was turned,
18  Petitioner walked up behind him while continuing to protest.  Startled, Saelor
19  turned around to find her within several inches of him.  He again ordered her to
20  stand back.  Avila, seeing a commotion, approached.  (Exh. 2, 39-40, 357-360.)

21       Both officers told Petitioner at least seven times to stand back and not
22  interfere with their investigation, or she would have to leave the area.  However,
23  she continued to walk back and forth and challenge their decision to impound the
24  car, repeating the alternatives Saelor had considered and rejected.  At least three
25  times, the officers told her that if she continued to disrupt their investigation, they
26  would have to arrest her.  When she continued to question them and failed to stand
27  back or leave, they arrested her for delaying and obstructing them.  Ten minutes
28  elapsed between the driver's and Petitioner's arrests.  (Exh. 2, 40-43, 358-366.)

1   Petitioner and Decaprio confirmed much of the officers' testimony, but
2   claimed Saelor did not reach into the stopped car before Petitioner's arrest, and
3   denied Petitioner approached him while his back was turned and he was reaching
4   into the car.  Indeed, they claimed Petitioner did not move even once from the spot
5   where the officers initially directed her to stay.  They also claimed the officers only
6   warned Petitioner not to interfere once.  (Exh. 2, 610-624, 631-632, 636, 650-669.)
7       After real party rested, the court denied Petitioner's acquittal motion, finding
8   real party presented sufficient evidence for the jury to decide the charge.  § 1118.1.
9   (Exh. 1, 135-137; Exh. 2, 462-470, 601-605.)  Contrary to Petitioner's argument,
10  and consistent with real party's position, the court found the crime was based not
11  on Petitioner's words, but on her physical interference and repeated delays and
12  obstruction of the officers' investigation, particularly delaying their ability to
13  impound and tow the car.  The court relied on *In re Muhammed C.*, 95 Cal.App.4th
14  1325, 116 Cal.Rptr. 2d 21 (2002), *People v. Robles*, 48 Cal.App.4th Supp. 1, 56
15  Cal.Rptr.2d 369 (1996), *People v. Roberts*, 131 Cal.App.3d Supp. 1, 182 Cal.Rptr.
16  757 (1982), and *In re Joe R.*, 12 Cal.App.3d 80, 90 Cal.Rptr. 530 (1970)
17  (disapproved on other grounds in *In re Robert G.*, 31 Cal.3d 437, 445, 644 P.2d
18  837, 182 Cal. Rptr. 644 (1982)), and distinguished language in *People v. Quiroga*,
19  16 Cal.App.4th 961, 968, 20 Cal.Rptr.2d 446 (1993).
20      As part of defining the elements of delaying or obstructing a peace officer
21  (Exh. 1, 158-163; Exh. 2, 913-916), the court instructed the jury, "Verbal
22  challenges and criticism of officers who are conducting a police investigation are
23  lawful so long as the verbal challenges do not obstruct or delay the police
24  investigation."  (Exh. 1, 160; Exh. 2, 915.)  The court refused to give Petitioner's
25  proposed instruction which stated, "The First Amendment protects the right of
26  citizens to speak to and ask questions of the police and to even verbally oppose
27  and/or challenge police action so long as that challenge does not involve a threat or
28  fighting words[,]" finding it misstated the law.  (Exh. 1, 222; Exh. 2, 725-726.)

1        During his jury argument, the prosecutor repeatedly stated that if the jurors

2  disbelieved the officers, they should acquit Petitioner.  (Exh. 2, 923, 925, 928, 931,

3  935.)  Consistently, the prosecutor argued, "If you believe that [Petitioner] was

4  completely honest on that stand yesterday when she testified, vote not guilty."

5  (Exh. 2, 933.)  Contrary to Petitioner's characterization of his case theory, the

6  prosecutor explained, "[W]e are not asking you to convict [Petitioner] based on her

7  words.  It was the fact that she came up on Officer [Saelor], that by her o[w]n

8  words after they told her you are going to get arrested, please leave the area six or

9  seven times, she chose to stay.  They could not continue doing what they were

10  supposed to do because she would not leave.  We are asking you to convict her

11  based on her actions, not just her words."  (Exh. 2, 983.)

## THE CALIFORNIA STATE COURT'S REASONED MERITS DECISION

15        The Los Angeles County Superior Court did not reach the merits of

16  Petitioner's habeas corpus petition, which the court dismissed because it lacked

17  jurisdiction to overturn the Appellate Division's orders dismissing the direct appeal

18  and denying Petitioner's application to reinstate it.  (Second Amended Pet. Exh. G.)

19        In contrast, the California Court of Appeal reached the merits of the habeas

20  petition, which it denied because Petitioner "has not stated facts or provided

21  evidence sufficient to demonstrate entitlement to relief."  (First Amended Pet. 30.)

22  "§ 2254(d) does not require a state court to give reasons before its decision can be

23  deemed to have been 'adjudicated on the merits.'"  *Harrington v. Richter*, 562 U.S.

24  86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (*Richter*) (holding a one-sentence

25  summary denial of a state habeas petition (*id.* at 96) was a decision on the merits).

26  Thereafter, the California Supreme Court summarily denied Petitioner's writ

27  petition seeking review of the Court of Appeal decision.  (Exh. 4C.)

28        Under the "look through" doctrine, federal courts presume that "[w]here

1   there has been one reasoned state judgment rejecting a federal claim, later
2   unexplained orders upholding that judgment or rejecting the same claim rest upon
3   the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115
4   L.Ed.2d 706 (1991).  By summarily denying the same claim, the California
5   Supreme Court is presumed to have based its denials on the same grounds stated in
6   the Court of Appeal decision.  Accordingly, under the 1996 Antiterrorism and
7   Effective Death Penalty Act (AEDPA), this Court reviews only the Court of Appeal
8   decision.  *Ylst v. Nunnemaker,* 501 U.S. at 803-804; *Medina v. Hornung,* 386 F.3d
9   872, 877 (9th Cir. 2004).

10

11          **PETITIONER'S CONTENTION AND REAL PARTY'S RESPONSE**

12

13          Petitioner contends her appellate counsel provided inadequate representation
14   in her direct appeal by failing to timely file an opening brief, resulting in the
15   appeal's dismissal without consideration of her appellate evidentiary insufficiency
16   and instructional error issues.  She alleges this failure was without fault on her part,
17   and prejudiced her because there was a reasonable probability consideration of her
18   issues on direct appeal would have resulted in a reversal of the judgment and a new
19   trial.  She further alleges the California courts, in denying her federal constitutional
20   claims, reached a decision (1) contrary to, and involving an unreasonable
21   application of, clearly established federal law as determined by the United States
22   Supreme Court, and (2) based on an unreasonable factual determination based on
23   the evidence presented.  (Pet., 1-5; Second Amended Pet., 2-3.)
24          Real Party disagrees.  Under the governing highly deferential review
25   standard, Petitioner must show not just that the state courts were legally incorrect,
26   but that their decisions were unreasonable, i.e., that no reasonable jurist could agree
27   with them.  This she cannot do.  First, apart from whether her appellate counsel
28   provided prejudicially inadequate representation, the state courts both correctly and

1    reasonably concluded Petitioner, a non-incarcerated lawyer, failed to exercise the

2    personal diligence required to pursue her appeal.  She failed to present evidence she

3    did anything to pursue either her direct appeal or her later writ petitions despite her

4    undisputed knowledge of her brief's due dates, the potential dismissal penalty for

5    failing to timely file it, and the need thereafter to timely pursue her writ remedy.

6         Second, the state courts both correctly and reasonably concluded Petitioner

7    could not show any inadequacy by her appellate counsel prejudiced her, because the

8    issues she claims he should have raised on appeal lack merit.  Thus, she would not

9    have prevailed on appeal even had her counsel litigated those issues.

10        To prevail on this petition, Petitioner must show both personal diligence and

11   prejudicially inadequate appellate representation, and that the state courts

12   unreasonably concluded she showed neither.  Because she cannot show any of these

13   things, this Court must deny her petition with prejudice.

## I.  THE HIGHLY DEFERENTIAL AEDPA STANDARD OF REVIEW APPLIES.

17        Title 28 U.S.C. § 2254(a), as amended in 1996 by AEDPA, allows federal

18   courts to issue habeas corpus relief to "person[s] in custody pursuant to the

19   judgment of a State court *only* on the ground that he is in custody in violation of the

20   Constitution or laws or treaties of the United States."  (Italics added.)

21        Where, as here, the petitioner's claim was adjudicated on the merits in state

22   court proceedings, 28 U.S.C. § 2254(d) permits the granting of federal habeas relief

23   only under two very narrow circumstances:

25        (d) An application for a writ of habeas corpus on behalf of a person in
26   custody pursuant to the judgment of a State court shall not be granted with
     respect to any claim that was adjudicated on the merits in State court
27   proceedings unless the adjudication of the claim –
28        (1) resulted in a decision that was contrary to, or involved an

13

1   unreasonable application of, clearly established Federal law, as determined
    by the Supreme Court of the United States; or

2          (2) resulted in a decision that was based on an unreasonable

3   determination of the facts in light of the evidence presented in the State court
    proceeding.

Unless the claim meets one of those two exceptions, 28 U.S.C. "§ 2254(d) bars

relitigation of any claim 'adjudicated on the merits' in state court[.]" *Richter*, 562

U.S. at 98. Petitioner concedes this standard governs her petition's review. Pet., 2.

       The first exception, listed in 28 U.S.C. § 2254(d)(1), has two components.

First, a state court decision is "contrary to" federal law *only* if it "applies a rule that

contradicts the governing law set forth in" controlling U.S. Supreme Court

opinions, *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389

(2000), or reaches a different result from such opinions when confronted with

"materially indistinguishable" facts. *Id.* at 406. Put another way, "a federal habeas

court may grant the writ [only] if the state court arrives at a conclusion *opposite* to

that reached by [the U.S. Supreme] Court on a question of law or if the state court

decides a case differently than [that] Court has on a set of *materially*

*indistinguishable facts.*" *Id.* at 413, italics added. Second, a state court

"unreasonably applies" federal law only "if [it] identifies the correct governing

legal principle from [the U.S. Supreme] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case." *Ibid.*

       When no "clearly established" U.S. Supreme Court opinion requires the state

court to grant relief on the petitioner's claim, §2254(d) bars relief. "'[I]t is not an

unreasonable application of clearly established Federal law for a state court to

decline to apply a specific legal rule that has not been *squarely established* by [the

U.S. Supreme] Court.' [Citation.]" *Richter*, 562 U.S. at 101, italics added.)

Moreover, a state court opinion need not cite, or even be aware of, any applicable

U.S. Supreme Court precedents to comply with AEDPA, "so long as neither the

14

reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

The Supreme Court has emphasized that review of state court rulings under AEDPA is highly deferential:

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.

*Renico v. Lett*, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010), italics in original, internal quotations and citations omitted (reversing federal courts' grant of habeas relief because regardless whether state supreme court's "opinion reinstating [petitioner]'s conviction ... was *correct*, it was clearly *not unreasonable*." *Id.* at 779, italics in original); *Hujazi v. Superior Court*, 890 F.Supp.2d 1226, 1230-1231 (Cen. Dist. Cal. 2012).

*Richter* recently elaborated on this standard by explaining that federal review of a state court opinion under AEDPA is different from an appellate court's direct review of a lower court ruling. *Richter*, 562 U.S. at 101. Specifically, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision. [Citation.]" *Ibid.* Under AEDPA, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the U.S. Supreme] Court." *Id.* at 102. The Federal habeas court cannot

"overlook[] arguments that would otherwise justify the state court's result [or] ignore[] further limitations of § 2254(d), including its requirement that the state court's decision be evaluated according to the precedents of [the U.S. Supreme] Court. [Citation.] *It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.* [Citation.]" *Ibid*, italics added.

Richter continued: "*If this standard is difficult to meet, that is because it was meant to be.* As amended by AEDPA, § 2254(d) … preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with [the U.S. Supreme] Court's precedents. *It goes no further.*" *Richter*, 562 U.S. at 102, italics added.

Richter then explained the rationale for this strict rule:

> Section 2254(d) reflects the view that *habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.* As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was *so lacking in justification* that there was an error well understood and comprehended in existing law *beyond any possibility for fair-minded disagreement.*

*Richter*, 562 U.S. at 102-103, italics added, internal quotations and citations omitted. This rule is needed because, if not so strictly limited, federal habeas review of state convictions wrongly would frustrate states' (1) sovereign power to punish criminals, (2) good faith attempts to honor constitutional rights, (3) significant interest in finality for concluded cases, and (4) legitimate exercise of state sovereignty. *Id*. at 103 (reversing 9th Circuit's grant of habeas relief to California state prisoner).

An essentially identical standard governs the second exception permitting

16

federal habeas relief for convicted state prisoners, where the state court decision was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); *Rice v. Collins*, 546 U.S. 333, 338, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006). The federal court conducts an "intrinsic review of a state court's processes," during which it "must be particularly deferential to [its] state-court colleagues." *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004). Satisfying § 2254(d)(2) "is a daunting standard – one that will be satisfied in relatively few cases." *Id*. at 1000.

This review is limited to Supreme Court authority "squarely addressing and clearly answering" the claims presented. *Marshall v. Rodgers*, ___ U.S. ___, 133 S.Ct. 1446, 1450-1451, 185 L.Ed.2d 540 (2013).

Moreover, in determining whether either of the § 2254(d) exceptions apply, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. [Citations.]" *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 159 L.Ed.2d 683 (2004).

As Petitioner concedes, this Court must follow this highly deferential standard in reviewing this petition. As discussed below, she cannot show the Court of Appeal decision was clearly unreasonable, and this Court must deny her petition.

## II. PETITIONER CANNOT SHOW THE CALIFORNIA COURTS UNREASONABLY CONCLUDED SHE FAILED TO SHOW (1) DILIGENCE IN PURSUING HER APPEAL, AND (2) PREJUDICE FROM HER APPELLATE COUNSEL'S ALLEGED INADEQUACY.

### A. The California Courts Reasonably Concluded Petitioner Failed to Show Diligence in Pursuing Her Appeal.

Where, as here, a petitioner alleges her appellate counsel was inadequate for failing to complete her appeal, she is not entitled to relief if she knew of this threatened loss of rights before it happened, yet did nothing to prevent it.

17

To secure relief based on ineffective assistance of appellate counsel, the defendant must not himself be at fault in the original loss of his appellate rights. ([*In re*] *Serrano* [(1995)] 10 Cal.4th [447,] 453, fn. 4[, 895 P.2d 936, 41 Cal.Rptr.2d 695].)  He must not be to blame in bringing about the loss, and if he learns of a threatened loss of rights before it occurs, he must act with reasonable diligence to prevent it. (See [*In re*] *Martin* [(1962)] 58 Cal.2d [133,] 137[, 373 P.2d 103, 23 Cal.Rptr. 167] ["[T]he question here is … whether petitioner had knowledge that his appeal was not being prosecuted and with that knowledge stood by without taking action to preserve it."].)

*In re Grunau*, 169 Cal.App.4th 997, 1003, 86 Cal.Rptr.3d 908 (2008); see *In re Benoit*, 10 Cal.3d 72, 89, 514 P.2d 97, 109 Cal.Rptr. 785 (1973) ("we will not indiscriminately permit a defendant … to invoke the doctrine of constructive filing when the defendant has displayed no diligence in seeing that his attorney has discharged this responsibility[]"); *People v. Riser*, 47 Cal.2d 594, 596, 305 P.2d 18 (1956) (dismissing untimely appeal where defendant's attorney failed to file appeal notice, but defendant presented no evidence he requested such a filing; "clearly when there is no showing of a convincing excuse for delay, the appeal must be dismissed[]").

Federal courts follow the same rule.  *Foley v. Biter*, 793 F.3d 998, 1003-1004 (9th Cir. 2015); *Carter v. Peyton*, 262 F.Supp. 701, 703 (W.D. Vir. 1966) ("… cases illustrate the need for petitioner to take some positive action in seeking to have his appeal perfected[;]" habeas petition denied); on the need for diligence generally in federal habeas challenges to state court convictions, see *Fue v. Biter*, 810 F.3d 1114, slip opn. 4-15 (9th Cir. Jan. 15, 2016).

Petitioner conclusorily argues "[t]he dismissal of the appeal was without fault of Petitioner and without her consent.  See Exhibit F, copy of motion to reinstate appeal." (Pet. 7.)  However, she offers no facts supporting that claim.  Exhibit F contains only Cook's declaration, which does not mention any communications between Petitioner and himself, and contains no declaration from Petitioner

1    describing her knowledge and conduct.

2        The defendants in *Foley*, *Grunau*, *Serrano*, and *Martin*, all of whom were

3    found to have been diligent in pursuing their appeals, were strikingly dissimilar

4    from Petitioner.  First, all were imprisoned, lacking normal communication

5    channels to learn and inquire about, or dispute, their appeals' progress.  In contrast,

6    Petitioner was not in custody when the Appellate Division certified the record and

7    set a briefing schedule in her direct appeal, or at any time thereafter.

8        Second, none were lawyers, as is petitioner, who actually knew about her

9    opening brief's initial due date and that if it was not timely filed, her appeal could

10   be dismissed.  Lawyers, unlike lay people like the *Foley*, *Grunau*, *Serrano*, and

11   *Martin* defendants, easily can "penetrate the esoteric world of appellate

12   procedure[,]" (*In re Grunau*, 169 Cal.App.4th at 1007) particularly where, as here,

13   they are directed to the specific court rule which sets out the dismissal sanction for

14   failing to file a brief.  Here, although Cook already represented her on appeal, the

15   Appellate Division served Petitioner personally with the notice of her brief's due

16   date, which stated that if she failed to timely file it, she was subject to sanctions,

17   and referred her directly to the rule stating that one possible sanction was dismissal.

18   Thus, she unquestionably knew failure to timely file her brief could result in her

19   appeal's dismissal.

20       Third, all four defendants in the cited cases were frustrated by their

21   attorneys' deliberate deception or gross negligence in responding to their inquiries

22   about their appeals' status.  Here, not only is petitioner a practicing lawyer, she

23   worked in the same firm with her appellate counsel Cook, and thus had regular

24   contact with him.  Nothing in Cook's declaration suggests he failed to apprise

25   petitioner of her appeal's status or his problems timely filing her opening brief.

26   Indeed, Cook served Petitioner with each of his extension requests, putting her on

27   notice he was having difficulty timely filing her brief.

28       Even more significantly, unlike the *Foley*, *Grunau*, *Serrano*, and *Martin*

defendants, petitioner never presented a declaration describing her own actions and knowledge regarding her appeal.  She never claimed she knew nothing about her appeal's progress or Cook's problems in filing her brief.  Her personal receipt of the original briefing and possible dismissal sanction notice, and both of Cook's extension requests, reasonably support the Court of Appeal's implied finding that she knew these facts yet did nothing to perfect her appeal, and thus was not diligent. Likewise, she never declared she did anything to advance her appeal or prevent its dismissal despite her undisputed knowledge of her opening brief's due dates and the possible dismissal sanction for failing to timely file it.  Moreover, she never explained why she took a month after her appeal's dismissal to move to vacate it, or why thereafter she took six months to file her first state court habeas petition, nor did she claim she did anything to more timely advance or reinstate her appeal, as the diligence standard requires.  That being so, petitioner's complete failure to show she did anything to prevent her appeal from being dismissed, or thereafter to timely attempt to reinstate it, given her knowledge, legal training, and regular contact with Cook, disentitled her from relief.  Because petitioner failed to show she did anything to prevent her appeal from being dismissed, the state courts reasonably held she was not entitled to relief.

Petitioner cannot show that, under the facts presented to the state courts, they unreasonably found she failed to show diligence in pursuing her appeal, and was not entitled to relief.  Thus, this Court should deny her petition with prejudice.

**B. The California Courts Reasonably Concluded Petitioner Did Not Show Her Appellate Counsel's Alleged Inadequacy Prejudiced Her.**

**1. Standard of Review.**

A criminal defendant alleging inadequate legal representation must show

1   both (1) her counsel provided inadequate representation, and (2) resulting prejudice.

2

3   In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S. Ct. 2052
(1984) (*Strickland*), [the United States Supreme Court] held that criminal

4   defendants have a Sixth Amendment right to "reasonably effective" legal
assistance, *id.* at 687, and announced a now-familiar test: A defendant

5   claiming ineffective assistance of counsel must show (1) that counsel's

6   representation "fell below an objective standard of reasonableness," *id.* at
688, and (2) that counsel's deficient performance prejudiced the defendant,

7   *id.*, at 694.

8

9   *Roe v. Flores-Ortega*, 528 U.S. 470, 476-477, 120 S.Ct. 1029, 145 L.Ed.2d 985

10  (2000); *accord Richter*, 562 U.S. at 104; *People v. Gamache*, 48 Cal.4th 347, 391,

11  227 P.3d 342, 106 Cal.Rptr.3d 771 (2010).

12      The first prong of the *Strickland* test – deficient performance – requires a

13  showing that counsel's performance was "outside the wide range of professionally

14  competent assistance." *Strickland*, 466 U.S. at 690. "A court considering a claim

15  of ineffective assistance must apply a 'strong presumption' that counsel's

16  representation was within the 'wide range' of reasonable professional assistance."

17  *Richter*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).

18      The second prong of the *Strickland* test – prejudice – requires a showing of a

19  "reasonable probability that, but for counsel's unprofessional errors, the result of

20  the [trial] would have been different." *Strickland*, 466 U.S. at 694. A reasonable

21  probability is a probability "sufficient to undermine confidence in the outcome."

22  *Id.*; *see also Woodford v. Visciotti*, 537 U.S. 19, 22, 123 S.Ct. 357, 154 L.Ed.2d 279

23  (2002). "The likelihood of a different outcome must be substantial, not just

24  conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693).

25      Specifically, this petition involves a claim of ineffective appellate counsel.

26  "A convicted defendant has the right to effective assistance of counsel on appeal."

27  *People v. Freeman*, 220 Cal.App.4th 607, 611, 163 Cal.Rptr.3d 222 (2013) citing

28

1   *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).  The two-

2   part *Strickland* test applies to inadequate appellate counsel claims.  *Evitts v. Lucey*,

3   469 U.S. at 391-405 (appellate counsel filed a merits brief but failed to file a

4   required statement on appeal, resulting in dismissal of defendant's appeal as of right

5   without addressing the merits; parties conceded counsel's conduct was ineffective);

6   *Roe v. Flores-Ortega*, 528 U.S. at 477 (*Strickland* "test applies to claims … that

7   counsel was constitutionally ineffective for failing to file a notice of appeal[]");

8   *Smith v. Robbins*, 528 U.S. 259, 284-289, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)

9   (both prongs of *Strickland* test apply to claims that appellate counsel filing briefs

10  under *People v. Wende*, 25 Cal.3d 436, 600 P.2d 1071, 158 Cal.Rptr. 839 (1979)

11  raising no issues and asking the court to review the record independently, provided

12  inadequate representation by not filing a merits brief).[3]

13          As discussed above, defendants alleging inadequate appellate representation

14  must affirmatively show actual prejudice resulting therefrom.  Reviewing courts

15  presume judicial proceedings are reliable, and require defendants to show their

16  counsels' alleged inadequacy actually caused the proceedings to be fundamentally

17  unfair and thus unreliable.  Thus, where a defendant claims his appellate counsel

18  provided inadequate representation by filing a *Wende* rather than a merits brief, the

19  defendant "must show a reasonable probability that, but for counsel's unreasonable

20  failure to file a merits brief, [defendant] would have prevailed on his appeal."

21  *Smith v. Robbins*, 528 U.S. at 285.[4]

22  _____

23  [3]  Courts reviewing inadequate counsel claims may reject them if defendants make
    insufficient showings on either factor without addressing the other.  Specifically, if

24  defendants fail to show the required prejudice, the claim "should" be rejected
    without addressing whether counsel's representation was adequate.  *Smith v.*

25  *Robbins*, 528 U.S. at 286, fn. 14; *In re Cox*, 30 Cal.4th 974, 1019-1020, 70 P.3d

26  313, 135 Cal.Rptr.2d 315 (2003).

27  [4]          In contrast, in rare cases where (1) defendants are deprived of counsel

28  entirely on appeal, (2) the state interferes with counsel's representation, or (3)

1   　　As already discussed, because this Court is applying the AEDPA in this
2   habeas petition challenging the California courts' resolution of Petitioner's federal
3   claim, this Court is not deciding whether Petitioner's appellate counsel provided
4   prejudicially ineffective representation.  Rather, it must decide only whether the
5   California courts reasonably concluded he did not.

6   　　Because the *Strickland* standard is a general one, state courts have great
7   leeway in applying it.  *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411,
8   173 L.Ed.2d 251 (2009); *see Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct.
9   2140, 158 L.Ed.2d 938 (2004) ("The more general the rule, the more leeway [state]
10  courts have in reaching outcomes in case by case determinations."); *see also Bobby*
11  *v. Van Hook*, 558 U.S. 4, 7, 130 S.Ct. 13, 175 L.Ed.2d 255 (2009) (per curiam)
12  (*Strickland* necessarily established a general standard because "[n]o particular set of
13  detailed rules for counsel's conduct can satisfactorily take account of the variety of
14  circumstances faced by defense counsel or the range of legitimate decisions
15  regarding how best to represent a criminal defendant") (internal quotations
16  omitted).  On federal habeas review, "[a] state court must be granted a deference
17  and latitude that are not in operation when the case involves review under the
18  *Strickland* standard itself."  *Richter*, 562 U.S. at 101.

19  　　As the Supreme Court has cautioned: "Federal habeas courts must guard
20  against the danger of equating unreasonableness under *Strickland* with
21  unreasonableness under § 2254(d).  When § 2254(d) applies, the question is *not*

22  _____
23  counsel "is burdened by an actual conflict of interest," reviewing courts presume
    prejudice.  *Smith v. Robbins*, 528 U.S. at 286-287.  See *Roe v. Flores-Ortega*, 528
24  U.S. at 484-486 (where defendant's appointed trial counsel failed to file a notice of
    appeal without his consent, defendant need show only that, but for counsel's failure,
25  he would have timely appealed.  Defendant need not specify points he would raise
26  in a reinstated appeal, or that his appeal might have merit, since no appellate
    attorney yet has reviewed the record).  Petitioner has not alleged such a situation,
27  which in any event is not present here.
28

whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105 (emphasis added).

Judicial review of a *Strickland* claim is "highly deferential," and "doubly deferential when it is conducted through the lens of federal habeas."  *Yarborough v. Gentry*, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam); *see also Delgado v. Lewis*, 223 F.3d 976, 981 (9th Cir. 2000) (*Strickland* standard is "very forgiving").  "'Surmounting *Strickland*'s high bar is never an easy task[,]'" and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010)).

### 2.  The California Courts Reasonably Concluded Petitioner Failed to Show Prejudice From Her Appellate Counsel's Alleged Inadequate Representation.

In her proposed opening brief lodged in the Appellate Division with her motion to reinstate her appeal (Exh. 3I), Petitioner contended that under California law, words alone can violate § 148 only if they are threats or fighting words.  Arguing her conduct involved only non-threatening words challenging the officers' decision to tow the car, she concluded there was insufficient evidence to support her conviction, and the trial court erred in refusing her proposed jury instruction.

First, Petitioner failed to present the trial record, Exhs. 1-2, or her proposed opening brief, Exh. 3I, to the California courts.  (Exh. 4A, 1, 5, 8.)  Without those documents, Petitioner could not and did not show any failure of proof or instructional error.  Without that showing, she could not and did not show any prejudice from her appellate counsel's failure to file a brief.  This Court must evaluate Petitioner's claim based on the record she presented to the state courts.  "[W]hether a state court's decision was unreasonable must be assessed in light of

the record the court had before it. [Citations.]" *Holland v. Jackson*, 542 U.S. at 652. The California courts cannot have been unreasonable in rejecting a claim where Petitioner failed to present the documents necessary to determine the claim's correctness. This failure alone warrants denying the petition with prejudice.

Even considered on its merits in light of the trial record and brief, Petitioner's argument fails. As the trial court correctly instructed the jury, non-threatening words, alone or combined with conduct, can violate § 148 if they interfere with or delay an officer's investigation.

> [S]ection 148 is not limited to nonverbal conduct involving flight or forcible interference with an officer's activities. No decision has interpreted the statute to apply only to physical acts, and the statutory language does not suggest such a limitation. [However], the statute must be applied with great caution to speech. Fighting words or disorderly conduct may lie outside the protection of the First Amendment [citation], just as a properly limited booking interview may lie outside the Fifth Amendment. But the areas of unprotected speech are extremely narrow.

*People v. Quiroga*, 16 Cal.App.4th at 968 (refusing to identify oneself during booking for felony arrest violated § 148 because it delayed identifying defendant and completing booking process). Also see *People v. Christopher*, 137 Cal.App.4th 418, 40 Cal.Rptr.3d 615 (2006) (giving false identification to officers violated § 148.) Moreover, refusing to comply with officers' valid commands regarding an active investigation is not protected speech. *In re Amanda A.*, 242 Cal.App.4th 537, 542, 545-551, 195 Cal.Rptr.3d 384 (2015) (rejecting claim that *Quiroga* barred § 148 liability where juvenile probationer told probation officer she would not go to placement; however, no § 148 violation because officer did not summon transport, and thus refusal was prospective only). Thus, contrary to Petitioner's argument, non-threatening words alone can violate § 148.

The cases upon which the trial court relied all upheld § 148 convictions

based on the defendants verbally interfering with and delaying investigations on facts remarkably similar to those here. *In re Joe R.*, 12 Cal.App.3d at 84, in affirming the arrestee's § 148 conviction, explained that the arrestee, by questioning officers' inquiring of other juveniles despite orders not to interrupt, "render[ed] [the officer] unable to elicit the information which he sought from the other three youths." *People v. Roberts*, 131 Cal.App.3d Supp. at 4-5, 7, also affirmed the defendant's § 148 conviction, based on his shouting obscenities at an officer trying to administer field sobriety tests to a driving under the influence suspect, and stepping between the officer and suspect. *In re Muhammed C.*, 95 Cal.App.4th 1325, affirmed a juvenile's § 148 violation based on his talking to a third person who had been arrested and handcuffed in a patrol car after officers repeatedly told him to stop, and defendant's persistence in doing so delayed the officers from processing the arrestee's car. *People v. Robles*, 48 Cal.App.4th Supp. at 5-7, affirmed the defendant's § 148 conviction, where he twice told a third person not to sell drugs to an undercover officer because the officer was "'a cop.'"

Petitioner argues the evidence showed she only verbally protested the officers' actions. (Pet., 3-4.) On the contrary, the evidence showed that, like the *Joe R.*, *Roberts*, and *Muhammed C.* violators, defendant's persistent questioning the officers about impounding the car after they repeatedly answered her questions and warned her to stop interfering with their investigation, combined with her physically impeding the officer within a few inches while his back was turned as he retrieved the registration and insurance documents from the car, violated § 148. Petitioner's testimony that she did not approach the officer while his back was turned as he reached into the car, never moved from where the officers first told her to stand, and received only one verbal warning, was contradicted by the officers' contrary testimony. The jury resolved that factual dispute against petitioner. On post-conviction review, the California courts were required to resolve that factual dispute in favor of the judgment of conviction, and thus had to reject petitioner's

26

version. *People v. Elliot*, 53 Cal.4th 535, 585, 269 P.3d 494, 137 Cal.Rptr.3d 59 (2012). Because Real Party's case theory, as argued to the jury, was that if the jury believed Petitioner's version of events, it had to acquit her, there was no possibility the jury would have convicted her under the given instructions if it believed her testimony. In short, Petitioner's legal theory was incorrect as a matter of law, the trial court's jury instructions correctly stated the law, and substantial evidence supported her conviction. The state courts correctly and reasonably so found. Thus, this Court must deny the petition with prejudice.

## CONCLUSION

For the reasons stated above, Real Party respectfully requests that this Court deny the Petition with prejudice.

Dated: March 3, 2016.

Respectfully submitted,

MICHAEL N. FEUER
Los Angeles City Attorney
DEBBIE LEW
Assistant City Attorney


*/s/ Rick V. Curcio*

RICK V. CURCIO
Deputy City Attorney
*Attorneys for Real Party in Interest*
PEOPLE OF THE STATE OF
CALIFORNIA

**PROOF OF SERVICE BY MAIL**

**UNITED STATES DISTRICT COURT CENTRAL
DISTRICT OF CALIFORNIA**

**COLLEEN FLYNN  V. LOS ANGELES COUNTY CHIEF PROBATION
OFFICER JERRY POWERS
PEOPLE OF THE STATE OF CALIFORNIA**

United States District Court Case No.: CV 15-06027-JAK (DFM)

   I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the above-referenced action.  My business address is 200 North Main Street, James K. Hahn City Hall East, 5th Floor, Los Angeles, California 90012.

   I am readily familiar with the practice of the Los Angeles City Attorney's Office, City Hall East, for collection and processing correspondence for mailing with the United States Postal Service.  In the ordinary course of business, correspondence is deposited with the United States Postal Service the same day it is submitted for mailing.

   On **March 3, 2016,** I served the following document

**REAL PARTY IN INTEREST'S ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES**

by placing a true copy in a sealed envelope(s) for collection and mailing, following ordinary business practice, at 200 North Main Street, James K. Hahn City Hall East, 5th Floor, Los Angeles, California 90012.  The person(s) served, as shown on the envelope(s), are:

**Jorge Gonzalez
Attorney at Law
2485 Huntington Drive, Suite 238
San Marino, CA  91108**

**Office of the Attorney General
State of California
300 South Spring Street
5th Floor-North Tower
Los Angeles, CA  90013**

**Honorable Valerie Salkin
Judge of the Superior Court
San Fernando Courthouse
Department C
900 Third Street
San Fernando, CA  91340**

**Los Angeles Superior Court**
**Appellate Division**
**111 N. Hill Street, Room 607**
**Los Angeles, CA 90012**


    I declare under penalty of perjury that the foregoing is true and correct. Executed on **March 3, 2016**, at Los Angeles, California.

                                                      **YOLANDA FLORES, Secretary**